```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

eCOMSYSTEMS, INC.,

    Plaintiff,

v.                              Case No.: 8:10-cv-1531-T-33AEP

SHARED MARKETING SERVICES,
INC., and ACE HARDWARE
CORPORATION,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants Shared Marketing Services, Inc. and Ace Hardware Corporation's motion to stay the instant action, filed on September 8, 2010. (Doc. # 13). On October 19, 2010, Plaintiff eCOMSYSTEMS, Inc. filed a memorandum of law in opposition to the motion to stay. (Doc. # 23). On November 2, 2010, Shared Marketing and Ace filed a reply memorandum. (Doc. # 31). For the reasons set forth below, the motion to stay is denied.

**I.   Background**

This is a patent infringement action related to United States Patent Nos. 7,315,983; 7,665,105; 7,673,237; 7,698,719; and 7,707,081. (Doc. # 13 at 1). eCOM, a Florida corporation that provides advertising solutions to its customers,

1

including its patented product, AdStudio®, (Doc. # 23 at 2-3), owns all five of the patents-in-suit, which are entitled "System and Method for Computer-Created Advertisements." (Doc. # 1 at 2-3, 4, 6, 8, 10).

Ace is a Delaware corporation and a cooperative of about 4,600 independently owned and operated member hardware stores throughout the United States and around the world. (Doc. # 23 at 3; Doc. # 1 at 1; Doc. # 12 at 2). eCom asserts that it began a relationship with Ace in 2003, using eCom's software to develop domestic and international circulars. (Doc. # 23 at 3). Along with the contract with Ace, eCom asserts that it developed relationships with many Ace members and currently provides web-based advertising services to over 200 Ace members. Id.

Shared Marketing is an Illinois corporation that provides Trade Fund management services to cooperative marketing organizations. (Id.; Doc. # 1 at 1). eCom alleges that Shared Marketing "has created a knock-off of eCom's patented AdStudio®" and that in 2009, Shared Marketing sold to Ace its infringing Brand Construction Kit, advertised as Ace Brand Place. (Doc. # 23 at 4). eCom contends that immediately thereafter, Ace cancelled its eCom account. Id. Shared Marketing contends that it did not create a "knock-off of

2

eCom's patented AdStudio®" (Doc. # 31 at 1)(emphasis in original); rather, Shared Marketing maintains that it "conceived, developed, and sold its alleged infringing system years before having any knowledge of [eCom] or the eCom product." Id.

Shared Marketing and Ace allege that all five of the patents-in-suit are invalid in view of prior art that was not considered by the Patent and Trademark Office at the time the patents-in-suit were granted. (Doc. # 13 at 2, 7). In September 2010, Shared Marketing filed a request for *ex parte* reexaminations of each of the patents-in-suit with the United States Patent and Trademark Office. (Doc. # 13 at 2). All five of the requests have been accepted and given a filing date. (Doc. # 31 at 2). Accordingly, there are *ex parte* reexaminations currently pending in regard to each of the patents-in-suit.

By their motion, Shared Marketing and Ace move the Court to stay the case pending resolution of the Patent and Trademark Office's reexamination proceedings of all five of the patents-in-suit. (Doc. # 13 at 2).

II. **Legal Standard**

"A district court has broad discretion to grant or deny a stay pending [Patent and Trademark Office] reexamination of

3

the patents-in-suit and 'is under no obligation to delay its own proceedings by yielding to ongoing [Patent and Trademark Office] patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze.'" MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 563 (E.D. Va. 2007) (quoting NTP, Inc. v. Research in Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005)).

There is no per se rule requiring that patent cases be stayed pending reexaminations because such a rule "would invite parties to unilaterally derail" litigation. Soverain Software LLC v. Amazon.Com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. Freedom Scientific, Inc. v. GW Micro, Inc., No. 8:08-cv-1365, 2009 U.S. Dist. LEXIS 70701, at *3 (M.D. Fla. July 29, 2009).

**III. Analysis**

   **A.   The Requested Stay Will Not Significantly Simplify the Case or Reduce the Burden of Litigation**

The Court notes that the parties are in the initial stages of this lawsuit and have undertaken little or no discovery. (Doc. # 13 at 5-6). Because this case is in its inception, the second and third factors appear, at first blush, to weigh in favor of a stay. As the court in Roblor Mktg. Group, Inc. v. GPS Indus., Inc., observed:

> [The reexamination] process is considered to be an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the [Patent and Trademark Office's] expertise and provide the federal courts with the expertise of the [Patent and Trademark Office] in resolving patent claims. One purpose of the reexamination procedure is to eliminate trial of invalidity issues when a claim is canceled or, otherwise, to facilitate trial of remaining issues following [Patent and Trademark Office] denial of reexamination and the survival of a claim.

633 F. Supp. 2d 1341, 1346 (S.D. Fla. 2008)(internal quotations and citations omitted).

However, because the pending Patent and Trademark Office proceedings are *ex parte* reexaminations, rather than *inter partes* reexaminations, the Court is not persuaded that the second and third factors weigh in favor of a stay. Rather, the Court anticipates that the benefits of a stay would likely to be marginal, at best.

5

*Inter partes* reexaminations provide a third party the right to participate in the reexamination process and, thus, have a *res judicata* effect on the third party requester in any subsequent or concurrent civil action. See 35 U.S.C. §§ 314-315; Tomco2 Equip. Co. v. S.E. Agri-Systems, Inc., 542 F. Supp. 2d 1303, 1306 (N.D. Ga. 2008). *Ex parte* reexaminations, on the other hand, do not bar the requestor from relitigating the exact same issues in district court. Id.

Accordingly, the Court does not find that judicial economy will be served by a stay because the pending *ex parte* reexaminations of the patents-in-suit would still leave Shared Marketing and Ace free to relitigate the exact same issues before this Court. See Id. at 1309 (noting that an *inter partes* reexamination, in contrast to an *ex parte* reexamination, "is very likely to simplify issues before this Court because the defendant cannot relitigate any of the issues determined by the [Patent and Trademark Office]"); Nidec Corp. v. LG Innotek Co., Ltd., No. 6:07-cv-108, 2009 U.S. Dist. LEXIS 46123, at *12-13 (E.D. Tex. Apr. 3, 2009)(noting that because the patents-in-suit were undergoing *ex parte* reexamination, the defendants would not be estopped "from asserting the same issues of invalidity" in the district court and the Patent and Trademark Office, which contributed

6

to the determination that "simplification of issues in this litigation will not necessarily result from reexamination").

Moreover, it should be noted that the reexamination process only considers the validity of the patent with regard to prior art. Tomco2, 542 F. Supp. 2d at 1307. The Patent and Trademark Office will not analyze other infringement issues or other grounds for invalidity. Id. Therefore, in the case at bar, these issues would remain and could ultimately require attention from this Court. See Tomco2, 542 F. Supp. 2d at 1310 ("[M]any courts deny stays when the reexamination will not resolve all the issues in the litigation"); cf. Ariba, Inc. v. Emptoris, Inc., No. 9:07-CV-90, 2007 U.S. Dist. LEXIS 78857, at *4 (E.D. Tex. Oct. 23, 2007) ("Statistically, 90% of all reexaminations result in the confirmation of at least some of the claims in a patent. Therefore, even after reexamination, if only one claim remained, invalidity would continue to be an issue, and so a stay would not preserve many resources").

**B.   The Requested Stay Will Unduly Prejudice eCom**

eCom contends that "a stay would cause irreparable harm" because the parties are direct competitors in the marketplace and Shared Marketing would be free to continue selling the allegedly infringing product while the reexamination runs its

7

course.  (Doc. # 23 at 6).  eCom also argues that a stay "would severely weaken eCom's ability to sell its . . . product while leaving [Shared Marketing] free to gut eCom's market share with its infringing product."  Id. at 5.

To support its argument, eCom argues that "[o]nce [Shared Marketing] began selling [Shared Marketing's allegedly infringing Kit] to Ace Corporate, Ace Corporate cancelled its contract with eCom and to this day threatens to deny eCom access to Ace images, trademarks, and accounting systems, thereby threatening eCom's ability to provide AdStudio® to its Ace Member customers."  (Doc. # 23 at 6).

Courts have recognized that where the parties are direct competitors, a stay would likely prejudice the non-movant. Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009).  In such situations, stays are denied where there is concern that the patent owner will be irreparably harmed because the accused product will continue to gain market share during the pendency of the stay.  Heraeus Electro-Nite Co., LLC v. Vesuvius USA Corp., Case No. 09-2417, 2010 U.S. Dist. LEXIS 1887, at *3 (E.D. Pa. Jan. 11, 2010).

Here, Shared Marketing gives no indication that it will cease its sales of the allegedly infringing product during the course of the five reexaminations.  See Nat'l Flooring

8

Equipment, Inc. v. Equipment Development Co., Inc., No. 0:09-cv-0974, slip op. at 4 (D. Minn. Jan. 28, 2010) ("This Court concludes that, because EDCO intends to continue selling the accused product throughout the stay, National will suffer undue prejudice.  This factor, therefore, militates against a stay here."); Baratta v. Homeland Housewares, LLC, No. 05-60187-CIV, 2007 U.S. Dist. LEXIS 92845, at *6 (S.D. Fla. Dec. 13, 2007) (finding the fact that "[d]efendant continues to sell the allegedly infringing product" weighed against granting a stay); cf. Heraeus, 2010 U.S. Dist. LEXIS 1887, at *3 ("Because Vesuvius has withdrawn the accused product, there is no risk of irreparable harm accruing during the stay. HEN can be adequately compensated with money damages.")

eCom has presented evidence that eCom was providing patented technology to Ace and that Ace backtracked in its relationship with eCom in favor of Shared Marketing when it was able to procure from Shared Marketing the same, allegedly infringing, product that Ace previously had been receiving from eCom.  (Doc. # 23 at 3-4).  If the Court were to grant the motion to stay, this trend could potentially continue to usurp eCom's market share.

This type of market loss is difficult to measure in monetary damages.  See Polymer Techs., Inc. v. Bridwell, 103

9

F.3d 970, 975-76 (Fed. Cir. 1996) ("Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat").

Furthermore, the potential prejudice to eCom is exacerbated by the lengthy and indefinite amount of time required to complete the reexamination proceedings for all five of the patents-in-suit. The requested stay would expire only after completion of the reexamination and the appellate process. Fusilamp, LLC v. Littelfuse, Inc., No. 10-20528-CIV, 2010 U.S. Dist. LEXIS 56553, at *12 (S.D. Fla. June 7, 2010). The reexamination process averages 25.4 months to complete, and the appellate process averages 24 months to complete. Id.

And whereas the estoppel effects of an *inter partes* reexamination can serve to reduce the prejudice to the non-movant, they are not implicated here because the patents-in-suit are undergoing *ex parte* reexaminations, which do not preclude Shared Marketing and Ace from relitigating the same issues in district court. See Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009)

(citations omitted) ("The estoppel effects of an *inter partes* examination can serve to reduce the prejudice to the non-movant"). Accordingly, the Court determines that a denial of timely enforcement of eCom's patent rights does indeed cause eCom undue prejudice.

The Court has balanced all factors and finds that they weigh in favor of denying Shared Marketing and Ace's motion to stay the instant action pending resolution of the Patent and Trademark Office's reexamination proceedings.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' motion to stay the instant action (Doc. # 13) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of January, 2011.

                                            VIRGINIA M. HERNANDEZ COVINGTON
                                            UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

11