UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ECOMSYSTEMS, INC.,

    Plaintiff,

v.                                 Case No. 8:10-cv-1531-T-33MAP

SHARED MARKETING SERVICES, INC.,
and ACE HARDWARE CORPORATION,

    Defendants.
_____/

## **ORDER**

    This matter is before the Court pursuant to Defendants' Rule 12(b)(1) Motion to Dismiss the Complaint for Lack of Standing (Doc. # 65), which was filed on July 6, 2011. Plaintiff eComSystems, Inc. filed a Response in Opposition to the Motion to Dismiss (Doc. # 67) on July 21, 2011, and Defendants filed a Reply Memorandum (Doc. # 73) on August 9, 2011.

    In this patent infringement action, Defendants jointly contend that the Plaintiff, eComSystems, Inc., lacks standing to bring suit because it does not hold legal title to the patents-in-suit. To address this contention, the Court will trace the path of eComSystems' corporate existence and reach the determination that eComSystems, as a patentee, has standing to sue Defendants for patent infringement.

**I.   Background**

James C. Evans owned Tivoli Services, Inc. in 1994. (James M. Evans Decl. Doc. # 68 at ¶ 2). In 1995, he changed the name of the company from Tivoli Services, Inc. to AM/PM Service Group, Inc., and the company began selling advertising products. Id. In 2000, James C. Evans and his two sons (James M. Evans and Jon C. Evans) created a wholly owned subsidiary corporation named eComSystems, Inc. Id. at ¶ 3. The Evans family used eComSystems to "conduct[] business related to [their] online advertising program including web-based electronic advertising systems that allow businesses to produce customized advertisements that are tailored to local concerns." Id.

On June 25, 2001, brothers James M. Evans and Jon C. Evans, along with their employee, Jon K. Gould, (collectively, the "Inventors") filed a patent application for a "System and Method for Computer-Created Advertisements." Id. at ¶ 4. On December 10, 2001, while the patent application was still pending, the Inventors assigned all patent rights associated with their online advertising business, including the pending patent application as well as future patent applications, to eComSystems, Inc. and its successors and assigns. (Doc. # 68-3). The Inventors filed the Assignment with the U.S. Patent

2

and Trademark Office on December 11, 2001.

Thereafter, on July 18, 2007, and October 31, 2007, the Inventors filed four additional patent applications related to their online advertising business. (James M. Evans Decl. Doc. # 58 at ¶ 6). In late 2007, the Evans family determined that it was too cumbersome to operate two companies: AM/PM and eComSystems. <u>Id.</u> at ¶ 7. Therefore, they decided to "streamline" their operations. Their goal was "to roll up the subsidiary corporation, eComSystems, Inc. into the parent corporation, AM/PM, and yet retain the name eComSystems for continued business operations." <u>Id.</u> at ¶ 8. To effectuate this, "AM/PM voted on December 31, 2007, to dissolve the subsidiary eComSystems, Inc. and to rename AM/PM to eComSystems, Inc., so that the business could continue under that name." <u>Id.</u> at ¶ 8. As stated by James M. Evans, "It was my intent, and that of the company's, to consolidate or roll the subsidiary corporation back into the parent corporation." <u>Id.</u>

As of January 1, 2008, following the dissolution of the old eComSystems and the name change of AM/PM to eComSystems, it was "business as usual" for the Evans family. They "had the same offices, the same corporate officers, the same employees, the same assets and liabilities, and the same

business goals, and the shareholders remained unchanged." Id. at ¶ 9.

On January 1, 2008, the U.S. Patent and Trademark Office issued U.S. Patent No. 7,315,983 ("the '983 Patent") to eComSystems. Two years later, the U.S. Patent and Trademark Office issued eComSystems U.S. Patent Nos. 7,665,105, 7,673,237, 7,698,719 and 7,707,081 ("the '105, '237, '719, and '081 Patents").

On July 12, 2010, eComSystems filed suit against Defendants alleging that Defendants violated all five of its patents. (Doc. # 1). Defendants seek an order dismissing eComSystems' Complaint pursuant to Rule 12(b)(1), Fed.R.Civ.P., based on the argument that eComSystems does not have standing to sue as a patentee.

## II. Legal Standard

The federal courts are courts of limited jurisdiction, and the "burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). A court is obligated to dismiss an action over which it lacks jurisdiction. Rule 12(h)(3), Fed.R.Civ.P. Defendants launch a factual attack upon the Court's jurisdiction pursuant Rule 12(b)(1) of the Federal

4

Rules of Civil Procedure. Accordingly, the Court's analysis is not confined to the four corners of the complaint. In the context of a Rule 12(b)(1) factual attack, "a court is not restricted to the face of the pleadings, [and] may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." Cedars-Sinai Med. Ctr., 11 F.3d at 1584.

**III. Analysis**

Before evaluating the standing issue, the Court clarifies a point of contention. It is Defendants' position that Plaintiff in this action is not eComSystems, but rather AM/PM. Throughout Defendants' Court submissions, including the pending Motion to Dismiss, Defendants refer to Plaintiff eComSystems as "AM/PM." This has further confused this already complex case and has caused this Court considerable consternation. Unless or until this Court finds that AM/PM is the Plaintiff in this action, it is inappropriate for Defendants to make that finding for the Court by referring to Plaintiff as AM/PM. Putting that matter aside, the Court will now address Defendants' contention that Plaintiff eComSystems lacks patentee standing.

    **A.    Patentee Standing**

Under the Patent Act, only a "patentee" has standing to

5

sue for patent infringement. See 35 U.S.C. § 281; Prima Tek II, LLC v. A-Roo Co., 222 F.3d 1372, 1376-77 (Fed. Cir. 2000). The Patent Act defines "patentee" as "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). However, the Federal Circuit has interpreted § 281 to limit standing to sue for patent infringement to the "party holding legal title to the patent"--the actual owner of the patent. Enzo APA & Son v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998).

"Patent issuance creates a presumption that the named inventors are the true and only inventors." Israel Bio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1263 (Fed. Cir. 2007). Further, "the issuance of a patent by the PTO is prima facie proof of the patentee's legal title." Aerotel, Ltd. v. Radient Telecom, Inc., 569 F. Supp. 2d 387, 392 (S.D.N.Y. 2008).

Patents are freely assignable, but assignments of patents must be in writing. 35 U.S.C. § 261. Furthermore, "[c]ommon corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other." Abraxis Bioscience, Inc. v. Navinta, LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010).

While this Court turns to the law of the Federal Circuit

6

for interpretation of patent law, the Court turns to Florida law when examining whether eComSystems holds title to a patent through assignment. Enovsys LLC v. Nextel Commc'ns, Inc., 614 F.3d 1333, 1342 (Fed. Cir. 2010)("Who holds legal title to a patent is a question of state law."). In addition, "[c]onstruction of patent assignment agreements is a matter of state contract law." Euclid Chem. Co. v. Vector Corrosion Techs., Inc., 561 F.3d 1340, 1343 (Fed. Cir. 2009).

**B.    Patent Issuance and Assignment**

The Patent and Trademark Office issued all five of the patents-in-suit to eComSystems, the Plaintiff here. Issuance of the patents is prima facie proof of eComSystems' legal title. Nevertheless, Defendants challenge eComSystems' standing on the basis of a defective assignment.

The Inventors executed an assignment of their patent application and any future patent applications to eComSystems and its successors, assigns, and legal representatives on December 10, 2011. (Doc. # 68-3 at 2-3). The Court must determine whether the assignment is effective to transfer title of the patents and patent applications from the old eComSystems to the new eComSystems, as its successor.

On December 31, 2007, AM/PM dissolved the subsidiary known as eComSystems (the old eComSystems) and renamed AM/PM

"eComSystems." Defendants assert that the new eComSystems (formed on or about December 31, 2007), does not hold title to any patents and/or applications because the old eComSystems never specifically assigned the patents or applications to the new eComSystems.

The Act contemplates free assignment of patents and patent applications, 35 U.S.C. § 261, and indicates that a notarized assignment (as in this case) "shall be *prima facie* evidence of the execution of an assignment, grant, or conveyance of a patent or application for a patent." Id. Here, the Court finds that the new eComSystems has established that it is the patentee as the "successor[] in title" to the old eComSystems pursuant to 35 U.S.C. § 100(d).

The court reached a similar result in Tri-Star Electronics International, Inc. v. Preci-Dip Durtal, SA, 619 F.3d 1364 (Fed. Cir. 2010). There, the patentee assigned an invention to an Ohio corporation, its successors, legal representatives and assigns. Prior to that date, the corporation had merged into a newly created California corporation with the very same name. The California corporation later merged into a Delaware corporation. After being sued by the Delaware corporation, the defendant filed a motion to dismiss (similar to the present motion) arguing that

the patentee assigned his invention to a non-existent entity, and thus the Delaware corporation lacked standing to sue.[1]

The court looked to state contract law, state corporate law, and the law of the Federal Circuit to address the patentee standing issue and determined that the California corporation, as the successor to the Ohio corporation, received the assignment of the patent at the time of the assignment. The court gave effect to the "parties' mutual intent" and recognized that "[i]n the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intention of the parties." 619 F.3d at 1367 (citing Alvin Ltd. v. United States Postal Serv., 816 F.2d 1562, 1565 (Fed. Cir. 1987)).

Further, the court determined that under Ohio Statute § 1701.82(A)(1), the Ohio corporation continued to exist for the purpose of vesting property rights, including the assignment of the patent application, in the successor California corporation. The court also focused on that provision of Ohio law which "endeavors to 'give effect, if possible, to every provision, and if one construction of a

---

[1] In Tri-Star, the assignment from the California corporation to the Delaware corporation was not challenged. Defendant's motion to dismiss challenged the assignment by the inventor to the California corporation.

9

doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.'" Tri-Star, 619 F.3d at 1367 (citing Farmers' Nat'l Bank v. Del. Ins. Co., 83 Ohio St. 309 (Ohio 1911)).

Similar to the aforementioned Ohio Statute, under Florida law, a dissolved corporation, such as the old eComSystems, "continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs." Fla. Stat. § 607.1405(1). In addition, a dissolved corporation may "dispos[e] of its properties." Fla. Stat. §§ 607.1405(1)(b). Here, the old eComSystems, though dissolved, continued to exist to dispose of its assets, including the assignment of the patents-in-suit to its successor. In addition, it is well established that a written assignment is effective to transfer rights in future applications, without any further paperwork, where, as here, the assignment makes clear that it is assigning rights in future patent applications. See DDB Tech., LLC v. MLB Advanced Media, LP, 517 F.3d 1284, 1290 (Fed. Cir. 2008)("If the contract expressly grants rights in future inventions, 'no further act [is] required once an invention [comes] into

10

being,' and 'the transfer of title [occurs] by operation of law.'")(quoting FilmTec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1573 (Fed. Cir. 1991)).

As to matters of contract interpretation, Florida law is no different from Ohio law in that it strives to assign meaning to each contract provision and to interpret contracts such that no contract provisions are rendered superfluous. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979)(noting that every provision in a contract should be given meaning and effect). This Court also interprets contracts with the aim of honoring the intentions of the parties. Stuyvesant Ins. Co. v. Butler, 314 So. 2d 567, 570 (Fla. 1975)(contracts "should be construed as to give effect to the intent of the parties").

Here, as in Tri-Star, the Court finds that the assignment transferred ownership of the patents-in-suit to the new eComSystems, the successor, and, therefore, eComSystems has standing to sue.[2] The Court therefore denies the Motion to

---

[2] eComSystems also advances the argument that, through de facto merger or mere continuation of business, "the Evanses . . . transfer[red] all rights and title in the patents from the dissolved eComSystems to the new eComSystems." (Doc. # 67 at 13). A close evaluation of Florida law reveals that the de facto merger and the mere continuation of business doctrines are legal fictions employed by the Courts to prevent the manipulation of corporate entities to avoid creditors. As

Dismiss.

Accordingly, it is

**ORDERED ADJUDGED and DECREED** that**:**

Defendants' Rule 12(b)(1) Motion to Dismiss the Complaint for Lack of Standing (Doc. # 65) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 20th day of January, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

correctly argued by Defendants, these doctrines are exceptions to "the traditional corporate rule which does not impose the liabilities of a predecessor corporation upon a successor corporation." Corporate Express Office Prods., Inc. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003)(internal citations omitted). This Court declines to use the doctrines of de facto merger and mere continuation of business to transfer assets from one entity to another. Nevertheless, eComSystems survives the Motion to Dismiss.